# STATE EX REL. N. E. SCHWARTZ v. C. R. MIDDLETON AND OTHERS.[1]

### May 18, 1917.

### Nos. 20,374—(205).

**School and school district — right to teach.**

1. A graduate from the advanced course of a Minnesota State Normal School whose diploma is indorsed by the president of the school granting it, and by the state superintendent at the expiration of two years actual successful teaching, is entitled to teach in any of the public schools in the state, regardless of the subjects taught therein.

**Same — fixing requirements of teachers.**

2. State high school board and state superintendent are vested with discretionary powers in fixing by rule the requirements of a principal in a graded school having a high-school department, in connection with the distribution of special state aid.

**Same — right to receive special state aid.**

3. A resolution of the high school board prescribing the requirements of a principal in a graded school having a high school department, in order to entitle the district to special state aid, does not disqualify the teacher, but only affects the right of the school to receive special state aid.

**Same — relator entitled to position and salary.**

4. Relator was legally·elected as principal of the schools in respondent school district and is entitled to have his contract signed and to receive his compensation thereunder.

Upon the relation of N. E. Schwartz the district court for Beltrami county granted its alternative writ of *mandamus*, directed to C. R. Middleton, as chairman of the board of trustees of Independent School District No. 111, and the ·other trustees of that district, commanding C. R. Middleton immediately to sign and execute the original contract for the employment of relator as teacher and superintendent in respondent district for the year beginning September 5, 1916, or show cause

[1]Reported in 162 N. W. 688.

137 M—3

why he had not done so. The matter was heard by Stanton, J., who made findings and quashed the writ. From an order denying relator's motion for amended and additional findings, he appealed. Reversed.

*W. E. Rowe* and *George E. Ericson,* for appellant.

*E. E. McDonald,* for respondents.

QUINN, J.

*Mandamus* to compel the respondent C. R. Middleton to sign, as chairman of the school board of Independent School District No. 111, of Beltrami county, a certain contract of employment of relator as teacher and principal, for the year 1916-1917. The court below made an order denying a peremptory writ and, from an order denying a new trial, relator appealed.

Upon the call of the case, the respondent made a motion to have the appeal dismissed. The appeal is from an order refusing a new trial. The motion to dismiss is denied.

The facts are as follows: School District No. 111 is an independent school district, includes the village of Baudette, has a graded school with a high-school department, an enrollment of over 300 pupils and employs 10 or more teachers. The respondent Middleton is chairman and W. E. Long, clerk of the school board.

Appellant is a graduate from the advanced course of the State Normal School at Winona, receiving his diploma in 1906, and having it indorsed July 25, 1908, by the president of that school and the state superintendent, at the expiration of two years actual successful teaching; thereby giving to such diploma the force of a first grade certificate, authorizing appellant to teach in any public school of the state during his life. Since that time the appellant has continued to teach in the public schools in the state, and, since September 1, 1913, has been the principal of and has taught high school subjects in the schools of the respondent district.

March 31, 1916, the school board passed a resolution re-electing appellant for the school year 1916-1917, at a salary of $1,400 per year. In this resolution the term superintendent, and not the term principal, is used. Appellant refused to accept the position at that salary. April 12 the board again met and, upon motion voted "that

the salary of principal N. E. Schwartz be raised to fifteen hundred for the school year 1916-1917." In this resolution the term principal, and not the term superintendent, was used. These matters do not appear in the testimony, but are set forth in the petition and admitted in the answer. It does appear, however, from the proofs, that during his connection with the schools he taught high school subjects as well as superintended the schools.

At the opening of school on September 5, 1916, the clerk of the school board presented to appellant a teacher's contract in conformity with his employment which he signed; the clerk then signed the the same and presented it to respondent Middleton for his signature. Middleton refused to sign the same, assigning as his reason that Mr. Schwartz did not hold a certificate entitling him to teach high school subjects in a graded school.

As has been observed, the word superintendent, and the word principal, are used interchangeably in the proceedings and records of the school board, and apparently in the sense that the word principal is used in sections 2795 and 2800 of the statute, and in bulletin No. 45 promulgated by the high school board, obviously referring to the one teaching in and having supervision of a graded school, subject to the general supervisory control of the school board and other officers.

Section 2800 of G. S. 1913 provides that graded schools shall include all schools below high schools, which are well organized, having at least four departments in charge of a principal holding a state professional certificate, or a graduate from the advanced course of a state normal school, or of a reputable college or university, and having regular and orderly course of study embracing all such branches as may be prescribed by the high school board. Section 2889 of the same laws provides, among other things, that the high school board shall establish rules relating to examination; reports, acceptance of schools, courses of study and other proceedings in connection with high and graded schools applying for special aid, and shall prescribe and enforce the maintenance of an optional English or business course, as equivalent to the preparatory collegiate course. Manifestly under these provisions of the statute and the authority given the board with reference to

special state aid, the state high school board and state superintendent are vested with discretionary powers in fixing by rule the requirements of a principal in a graded school in order to entitle the school to special state aid.

With the general welfare of the schools and the apportioning of state aid in mind, the high school board, some eight years prior to the commencement of this action, adopted and promulgated certain rules relating to high and graded schools known as bulletin No. 45. These rules were amended from year to year but retained the original number. As published in the bulletins of 1914 and 1915, these rules specified the requisite qualifications of a principal of a graded school, in order to entitle the school to special state aid, giving as one qualification the holding of "a diploma from the advanced course of a Minnesota state normal school." The bulletin of 1915, under "Instructors of Recognized High School Work" is deemed unimportant to the determination of the questions involved, and is not construed. In the bulletin of 1916, the above qualification was changed to read "a diploma from the advanced course of a Minnesota state normal school, provided the graded school does not receive aid for special high school instruction."

November 2, 1916, the high school board adopted the following resolution:

"Whereas, the high school board, at its meeting May 8, 1916, adopted rules and regulations, as printed in bulletin No. 45, bearing date of publication May, 1916, relating to the qualifications of teachers in the several positions, departments and grades of high and graded school systems, including qualifications of principals of state graded schools and instructors of high school subjects in graded schools, these rules and regulations are to be construed as applying to new appointees and as not operating to disqualify one from continuing to act as principal of a state graded school or as teacher of high school subjects in a state graded school who was qualified to act as such under previous rules relating to such positions."

The evidence is undisputed, that the above resolution is but declaratory of the interpretation and application given the provisions of bulletin No. 45, from its inception, by the high school board. It has never

been' otherwise construed or applied, and as so applied it in no manner affects the respondent district. The relator was in its employ teaching high school subjects when the change was made in the bulletin, and, under the above construction and application, the change did not apply so as to affect the district in the way of receiving special aid. If the provisions of the bulletin had applied, as contended for by respondents, its only effect would have been to deprive the school of special state aid, which it otherwise would have been entitled to. The relator held a first-grade certificate which entitled him to teach in any of the public schools in the state without regard to the subjects taught therein, and, in the absence of the resolution, the provisions of the bulletin could in no way affect or invalidate his employment as principal and teacher for the school year 1916-1917. It only had to do with the granting of special state aid. The relator's election and employment by the respondent school board was legal, and he is entitled to his contract and compensation for the time he has acted as principal and teacher thereunder.

Order reversed.